Bankers Conseco Life Ins. Co. v KPMG LLP (2023 NY Slip Op 50221(U))

[*1]

Bankers Conseco Life Ins. Co. v KPMG LLP

2023 NY Slip Op 50221(U)

Decided on March 21, 2023

Supreme Court, New York County

Reed, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 21, 2023
Supreme Court, New York County

Bankers Conseco Life Insurance Company, WASHINGTON NATIONAL INSURANCE COMPANY, Plaintiff,

against
KPMG LLP, Defendant.

Index No. 653765/2019

Robert R. Reed, J.

The following e-filed documents, listed by NYSCEF document number (Motion 007) 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 183, 184, 185, 186, 187, 188, 189, 198, 199, 200 were read on this motion to/for DISCOVERY .
The following e-filed documents, listed by NYSCEF document number (Motion 008) 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 190, 191, 192, 193, 194, 195, 196, 197, 201, 202, 278
were read on this motion to/for DISCOVERY.
The following e-filed documents, listed by NYSCEF document number (Motion 013) 238, 239, 240, 241, 242, 243, 244, 245, 246, 247, 248, 249, 250, 251, 252, 253, 254, 255, 257, 258, 259, 260, 262 were read on this motion to/for DISCOVERY.
The following e-filed documents, listed by NYSCEF document number (Motion 015) 285, 286, 287, 288, 289, 290, 291, 292, 293, 294, 295, 296, 297, 298, 299, 300, 301, 302 were read on this motion to/for VACATE/STRIKE - NOTE OF ISSUE/JURY DEMAND/FROM TRIAL CALENDAR.
Motions sequence numbers 007, 008, 013 and 015 are consolidated for disposition.
In motion sequence 007, plaintiffs Bankers Conseco Life Insurance Company and Washington National Insurance Company ("plaintiffs") move to compel defendant KPMG LLP ("KPMG") to produce three categories of documents allegedly relevant to the aiding and abetting fraud claim in this litigation. The First Department in this case identified the three elements of aiding and abetting fraud: (i) an underlying fraud; (ii) actual knowledge; and (iii) substantial assistance (Bankers Conseco Life Ins. Co. v. KPMG LLP, 189 AD3d 402 [1st Dep't 2020]). In order to prove the elements of the claim, plaintiffs first seek that KPMG produce documents that show the annual compensation Herschel Wein received from January 1, 2013 through December 31, 2016, and documents sufficient to show the amount of fees Wein [*2]generated for work for Platinum/Beechwood and their related entities versus fees generated for work for other clients. Second, plaintiffs seek that KPMG produce responsive documents from the custodial files of Ann Culala-Besalo, an employee of KPMG Bermuda, and David Watt, an employee of KPMG Caymans. Third, plaintiffs seek that KPMG search its custodians' ESI for three personal email addresses belonging to Platinum employees and to produce the non-privileged, responsive documents it locates as a result of the search.
In motion sequence 008, defendant KPMG asks the court to order plaintiffs to produce (1) documents that plaintiffs withheld on the basis of an Indiana statute concerning the confidentiality of submissions made to the state insurance examiner, (2) documents concerning the settlement agreements plaintiffs have entered into with parties who, according to plaintiffs, engaged in the underlying fraud that KPMG supposedly assisted, and (3) documents filed under seal in one of the lawsuits that has settled — namely plaintiffs' lawsuit against their former reinsurance broke, Willis Re. In motion sequence 013, KPMG likewise seeks to depose certain critical witnesses.
And finally, in motion sequence 015, KPMG seeks to vacate plaintiffs' note of issue on the basis that KPMG has yet to receive from plaintiffs the categories of documents described above.
BACKGROUND
The complaint alleges that plaintiffs are insurance companies that in 2013 sought to reinsure certain blocks of long-term care insurance policies. Mark Feuer and Scott Taylor allegedly approached plaintiffs and represented that they were forming a reinsurance company named Beechwood and wanted to submit a proposal for plaintiffs' reinsurance business. Feuer and Taylor represented that they owned/controlled Beechwood and that Beechwood had at least $100 million in capital. But, according to the complaint, Beechwood was actually owned and operated by the hedge fund Platinum Partners, L.P. ("Platinum") (Complaint at 3). This fact, allegedly, was never disclosed to plaintiffs.
Plaintiffs assert that Beechwood alone could not have defrauded plaintiffs, and that it needed a "name brand" firm to devise and assist in carrying out the scheme to bolster Beechwood's claimed $100 million capitalization without revealing that Beechwood was a front for the hedge fund. Allegedly, KPMG became that brand name. Plaintiffs allege that KPMG first devised the demand note scheme — meaning it fabricated a demand note to make it look like Beechwood had $100 million in capitalization. According to plaintiffs, KPMG also covered up the true ownership of Beechwood — and then provided a valuation letter confirming Beechwood's representation of $100 million in capital while deleting from the letter any reference to Platinum.
According to plaintiffs, documents produced to date show that: (i) KPMG principal Herschel Wein devised the demand note scheme and directed others in how to effectuate it; (ii) KPMG principal Michael Athanason knew that the purpose of KPMG's involvement was to hide Platinum's involvement with Beechwood because, as Athanason wrote in an internal memo, "insurance companies will not do business with hedge fund guys"; and (iii) Wein pressured other KPMG employees to issue the valuation letter confirming Beechwood's $100 million representation even when others at KPMG believed they needed to do more work before issuing such a valuation.
Motion Sequence 007
In light of First Department's reversal of the trial court's previous dismissal of plaintiffs' [*3]claim for aiding and abetting the fraudulent inducement of plaintiffs to enter into the reinsurance agreements, plaintiffs now seek, and KPMG thus far has refused to produce, documents that, according to plaintiffs, would be relevant to the actual knowledge and substantial assistance elements of the aiding and abetting cause of action (Bankers Conseco Life Ins. Co, 19 AD3d at 402). Those documents concern: (1) annual compensation for Wein, (2) custodial files of two KPMG employees, and (3) custodians' ESI for three personal email addresses belonging to Platinum employees.
CPLR provides that there "shall be full disclosure of all matter material and necessary in the prosecution or defense of an action" (CPLR 3101[a]). "The words, 'material and necessary' are to be interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity" (Allen v. Crowell-Collier Pub. Co., 21 NY2d 403, 406 [1968]). The requesting party must demonstrate that the discovery it seeks "will result in the disclosure of relevant evidence or is reasonably calculated to lead to the discovery of information bearing on the claims" (Vyas v. Campbell, 4AD3d 417, 418 [2nd Dep't 2004]). Further, if there is "any possibility that the information is sought in good faith for possible use as evidence-in-chief or in rebuttal or for cross-examination, it should be considered 'evidence material in the prosecution or defense" (Allen, 21 NY2d at 407). New York law "observes a very liberal discovery policy as regards to motions to compel pursuant to CPLR 3124" (Gottwald v. Geragos, 61 Misc 3d 1214(A), at *9 [NY Cnty 2018]).
First, plaintiffs request documents regarding compensation for Wein, who was a principal of KPMG during the relevant time of the transaction. Plaintiffs also request documents that show the amount of fees KPMG invoiced in each of the relevant years with respect to matters originated by Wein, distinguishing between fees paid by Platinum/Beechwood and fees paid by other KPMG's clients. According to plaintiffs, these documents are warranted because they can reveal KPMG's motives and actual knowledge. KPMG maintains that compensation documents are both irrelevant, as well as personal and sensitive, and are therefore undiscoverable.
Here, plaintiffs have not adequately demonstrated that the income information demanded would be otherwise unobtainable. Disclosure of personal income records is generally disfavored. While CPLR 3101 (a) is interpreted liberally, New York courts recognize a privacy interest in personal income records. A party seeking disclosure must make a strong showing of necessity and demonstrate that the information is otherwise unavailable from other sources (Gordon v Grossman, 183 AD2d 669, 670 [1st Dept 1992]). Here, plaintiffs have not made such showing.
Further, Wein is not a party to this action. "Discovery requests that tend to broaden the scope of litigation and intrude upon rights to privacy should not be permitted unless there is a showing that the need for disclosure outweighs the importance of protecting non-parties' privacy" (Van Epps v Cnty. of Albany, 184 Misc 2d 159, 164 [Sup. Ct. 2000]). In light of documents plaintiffs have already received, plaintiffs' request for income compensation records of Wein, a nonparty herein, is therefore denied.
With respect to plaintiffs' request for invoices related to every matter originated by Wein for the period of January 2013 through December of 2016, this court finds the demand to be improper. Discovery demands are improper if they seek irrelevant information or are overbroad (Pascual v Rustic Woods Homeowners Ass'n, Inc., 173 AD3d 757, 758 [2nd Dept 2019]). Seeking disclosure of invoices for every matter Wein worked on for three years during his employment with defendant, irrespective of whether the matter is related to Beechwood and [*4]Platinum's valuation, is overbroad and does not provide information relevant to plaintiffs' burden of proof, or with respect to any defense raised. Normally, "where the discovery demands are overbroad, the appropriate remedy is to vacate the entire demand rather than to prune it" (id.). In any event, this court finds that that defendant sufficiently responded to plaintiffs' demand by providing records and invoices related to all services provided to Beechwood and Platinum by KPMG for the relevant time period. Plaintiffs' request relating to fee information for KPMG clients other than Beechwood or Platinum is denied.
Plaintiffs further request limited discovery from Ann Culala-Besalo, an employee of KPMG Bermuda, and David Watt, an audit partner at KPMG Caymans. Culala-Besalo is the author of the KPMG memo which concluded that the "undrawn down portion of the Demand Note should not be recognized as an asset and equity on the balance sheet" (Buckely aff, exibit 8 at 2). This admission allegedly evidences that KPMG's demand note scheme was improperly treated as "capital' by KPMG. Watt, on the other hand, is alleged to have had direct contact with Beechwood in the initial stages of the alleged scheme and that he sent at least three emails to Wein cautioning him about the pitfalls associated with approaches for establishing Beechwood.
KPMG has not objected that these documents are irrelevant or that it would be too burdensome to collect them. Rather, KPMG claims that these documents are not within its "possession, custody, or control" and are instead in the control of KPMG Bermuda and KPMG Caymans, which KPMG contends are separate entities and that KMPG cannot obtain documents from its sister companies.
This court orders KPMG to use its best efforts to obtain the requested documents, which are indisputably relevant. KPMG's contention that the documents in question are not in their possession because they are under control of their overseas affiliates, on its own, is insufficient to establish that KPMG lacks access to the documents. The law in New York is clear: the phrase "possession, custody or control'" means "constructive possession," not "actual possession" (Commonwealth of No. Mariana Islands v. Canadian Imperial Bank of Commerce, 21 NY3d 55, 62-62 [2013]). The phrase "does not require that the party have legal ownership or actual physical possession of the documents at issue; rather, documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party" (id.).
Here, KPMG's documents show that KPMG, KPMG Bermuda and KPMG Caymans have regularly corresponded with each other and that Culala-Besalo and Watt freely exchanged information with employees of KPMG in connection with the facts underlying the complaint (Buckley Aff Ex 10). On these facts, this court is satisfied that KPMG could have constructive possession of documents that may be in the actual possession of its affiliates. Hence, the court holds that it is appropriate to direct KPMG to use its best efforts to discover the documents. To the extent that KPMG is unable to retrieve them, KPMG is directed to produce a "Jackson Affidavit" — by a person with knowledge who is an officer or custodian of records at KPMG — to confirm that documents requested have been searched for and are not found (Jackson v. City of New York, 185 AD2d 768 [1st Dep't 1992].
Finally, plaintiffs request that KMPG use three search terms in the form of three email addresses to search for documents over the custodians' ESI. The parties negotiated search terms and KPMG finalized its terms for collection more than two years ago. That collection was made from a wide number of sources, including 11 individual custodians and archived ESI data. It also was based on broad search terms that likely captured documents containing the three email [*5]addresses. For example, the broad terms "David", "Levy" and "Feuer," along with nearly 40 additional search terms, were used to identify ESI for collection. Now plaintiffs want to direct defendants to specifically use search terms such as "daveilevy&commat;gmal.com" or "mmgeuer&commat;gmail.com." Considering that KPMG has already conducted a search containing terms such as "Levy" and "Feuer," the type of search that plaintiffs now request would likely be duplicative. Moreover, those exact search terms were the subject of discussion before Justice Sherwood, who declined plaintiffs' demands that KPMG search still more. Finally, these are not email addresses that plaintiffs only recently discovered. On the contrary, executives at CNO, plaintiffs' parent company, were communicating directly with these email addresses years ago during the events in question. Therefore, this court will not order KPMG to renew its ESI search process.
In conclusion, plaintiffs' motion sequence number 007 is granted in part, to the extent that KPMG is directed to produce documents related to communications concerning Culala-Besalo and Watt. KPMG must produce those documents within 30 days from the issuance of this decision, or must, alternatively, produce an appropriate "Jackson Affidavit." Plaintiff's motion is otherwise denied.
Motion sequence 008
Motion sequence 008 is KPMG's motion to compel discovery from plaintiffs, including: (i) all communications withheld on the basis of the Indiana insurance examination privilege and the Indiana professional services privilege; (ii) non-redacted copies of all settlement agreements concerning claims arising from the Beechwood re insurance transactions; (iii) supplement to plaintiffs' privilege logs; and (iv) a complete set of all documents filed with the court in the matter titled BCLIC et al v. Wills Re. Inc., Index No. 655336/2019 [Sup Ct NY Cnty] (the "Wills re action").
Plaintiffs have properly asserted insurance examination privilege with respect to 247 documents that plaintiffs previously made to the Indiana state insurance examiner. Indiana Code Section 27-1-3.1-15(a) provides that "all working papers, recorded information, documents and copies thereof produced by, obtained by, or disclosed to the commissioner" in the court of an examination are: (1) confidential and privileged; and (4) are not subject to discovery or admissible in evidence in a private civil action.
As an initial matter, New York courts "routinely apply the law of the place where [the evidence in question will be introduced at trial or the location of the discovery proceeding when deciding privilege issues" (People v Greenberg, 50 AD3d 195, 198, [1st Dept 2008]). However, there are circumstances in which an interest-balancing analysis is properly undertaken to decide whether another state's law should govern the evidentiary privilege (Peerenboom v Marvel Entertainment, LLC, 148 AD3d 531, 532-533, [1st Dept 2017]).
KPMG claims that this court should not apply an Indiana privilege created to further the interests of Indiana regulators to the documents of an Indiana insurance company. However, KPMG's position is foreclosed by First Department precedent. In Ambac Assur. Corp. v. Nomura Credit & Capital, Inc., the First Department weighed "New York's interest in the full disclosure of information needed to allow a defendant to mount a defense" against the interests of the state of Wisconsin in its regulation of insurance, and held that Wisconsin's insurance examination privilege barred the defendant's request for documents from plaintiffs, a Wisconsin insurance [*6]company (175 AD3d 1165, 1166 [1st Dep't 2019]).
In this case, the balance of interests favors the application of the statutory privilege. Contrary to defendant's argument, in these circumstances, New York's interest in the full disclosure of information needed to allow a defendant to mount a defense in court is outweighed by Indiana's interest, embodied in Indiana Code Section 27-1-3.1-15(a), in its regulation of insurance. The communications at issue, while relevant to the underlying litigation, were clearly generated as part of the Indiana regulators' investigation and regulation of plaintiffs. In Ambac, on the same facts, the First Department ruled that the communication is privileged (Ambac Assur. Corp. 175 AD3d at 1166). This court will not deviate from First Department precedent. Accordingly, the court will not compel plaintiffs to produce communications withheld on the basis of the Indiana insurance examination privilege.
Separately, KPMG asks this court to compel plaintiffs to produce documents which plaintiffs previously refused to produce on the basis of professional services privilege. KPMG argues that there is no privilege where the documents are in the possession of the clients (here plaintiffs), not just the accountants. However, defendants' argument is based on an inapplicable statutory provision (see KPMG Br at 9-10, citing Indiana Code § 25-2.1-14-1, which "directs the accountant to maintain client information in confidence"). Indiana's "accountant-client privilege derives from Indiana Code Section 25-2.1-14-2, not 25-2.1-14-1 (Orban v. Krull, 805 NE2d 450, 453 [Ind. App. 2004]). Section 25-2.1-14-2 provides that "information derived from or as the result of professional services is confidential and privileged" (Indiana Code § 25-2.1-14-2). This is a separate rule from the one stated in the prior section, which creates a right for the accountant to refuse to "divulge information relative to and in connection with any professional service" (Indiana Code § 25-2.1-14-1).
Rather, Section 25-2.1-14-2 expressly creates a privilege. In describing Indiana's prior codification of its accounting privilege, the Indiana Court of Appeals explained that "the legislature has made a judgment that the welfare of the client will be best served if matters communicated between client and accountant are subject to a zone of privacy controlled by the client" (Ernst & Ernst v. Underwriters Nat'l Assurance Co., 178 Ind App 77, 86 [Ind. App. 1978]). There is thus no basis for KPMG's suggestion that the privilege is limited to documents in the accountant's possession. Any such understanding would be contrary to Indiana precedent, and it would render the meaning of the word "privilege" meaningless. If this court were to accept KPMG's position, there would be no meaningful, for example, doctor-patient privilege, if a party could simply demand its opponent's communications with a doctor from the party-patient but not from the doctor. Accordingly, this court holds that plaintiffs have properly asserted professional services privilege.
Next, KPMG asks this court to compel plaintiffs to produce documents concerning settlement of related claims against third parties. Plaintiffs have also allegedly refused to provide communications concerning those agreements. Plaintiffs allegedly even refused to describe the redacted or withheld content in a privilege log. Plaintiffs contend that their production is sufficient, that there is no absolute right to the production of settlements agreements, that only relevant portions are subject to recovery, and that defendants have failed to explain how any additional facts from or about the settlements could be relevant to this case.
Discovery regarding a settlement in a related matter is well-established, even where the agreement contains a confidentiality provision (Mahoney v. Turner Constr. Co., 61 AD3d 101 [1st Dep't 2009]). And although plaintiffs contend that defendants have not explained how the [*7]requested settlements could be relevant to this case, KPMG has clearly articulated that unredacted production of the settlements could allow KPMG to discover whether a settling party promised to cooperate with plaintiffs, or if plaintiffs have entered into any undertaking impacting their own discovery obligations. Any provisions that could impact discovery or testimony from the settling parties (including plaintiffs) is something KPMG has a right to know. Moreover, the settling parties are the key players in the reinsurance transaction, and thus presumptively the key players in the alleged fraud. As such, they may have made admissions or other relevant statements about the fraud, and that may undermine any claim that KPMG's role was a proximate cause of any such fraud, or the transaction itself, or any loss to plaintiffs. Accordingly, plaintiffs are ordered to produce all documents concerning any settlement between plaintiffs and any third party relating to the reinsurance agreements, Beechwood, or Platinum, including complete copies of the agreements themselves. To the extent that plaintiffs are concerned about confidentiality of the settlement agreements, there is a confidentiality agreement and order in place in this case that will protect discovery like this.
Next, KPMG takes issue with the privilege log previously produced by plaintiffs. The court will not order plaintiffs to supplement the log. Plaintiffs have already provided a 459-page document by document privilege log and revised that log to provide further descriptions of documents (Buckley Aff Ex 3-4). Moreover, KPMG does not specifically identify the entries with which it takes issue. Therefore, any court order directing any further supplementation of the privilege log is unwarranted.
Finally, KPMG requests that plaintiff produce an original complaint filed with the court in the matter titled BCLIC et al v. Willis Re. Inc., Index No. 655336/2019 [Sup Ct NY Cnty] (the "Willis Re action") that is currently sealed. Plaintiffs argue that this request is moot because Willis Re recently produced 'nearly everything ever filed in plaintiffs' action against it" (Buckley Aff Ex 6). However, plaintiffs do not dispute that KPMG still did not receive the complaint itself.
KPMG has demonstrated the importance of discovering the complaint filed in Willis re action. It is undisputed that plaintiffs instituted a number of separate proceedings against a host of different people and parties regarding the transaction at issue herein. For example, suing Beechwood's officers, plaintiffs have allegedly complained that they had been told the company would be capitalized with a demand note; having settled that action, they then allegedly complained to KPMG that they never knew about the same demand note (BCLIC et al. v. Feuer et al., 16-cv-7646, SDNY., ECF No. 1 [complaint and demand for jury trial] [alleging Beechwood Re had "advised Plaintiffs in 2013, when Plaintiffs were in the process of selecting a reinsurer, that [Beechwood] had a demand note in the amount of $100 million"); BCLIC et al. v. Feuer et al., 16-cv-7646, SDNY., ECF No. 52 [first amended complaint, 67] [paintiffs alleging they asked Beechwood to disclose the source of its $100 million in capital, but Beechwood expressly declined]). KPMG might never have learned of this alleged discrepancy but for its review of dockets that were not under seal. If there are reasons to keep the Willis Re pleadings under seal, then plaintiffs need to explain them to KPMG in discovery. Otherwise, plaintiffs are directed to produce the complaint form Willis re action to KPMG.
In conclusion, motion sequence 008 is granted in part. More specifically, the court holds that plaintiffs properly asserted insurance examination and professional services privileges and are not obliged to produce documents covered by the privileges in question. Moreover, the court detected no deficiencies with respect to plaintiffs' privilege log. However, plaintiffs must [*8]produce within 30 days of the issuance of this decision non-redacted copies of requested settlements as well as the complaint from the "Willis Re action".
Motion sequence 013
In motion sequence 013, KPMG moves to compel the deposition testimony of two former CNO board members — Keith Long and Charles Jacklin — and Thomas Kleyle, CNO internal auditor.
Plaintiffs have not sought a protective order by motion, but have relied upon CPLR 3103(a) to argue against KPMG taking the depositions at issue. CPLR 3103(a) provides that the courts may make protective orders limiting the use of any disclosure device, and the courts must exercise their broad discretion to fashion judicial protective orders and similar safeguards (Alpha Funding Group v. Continental Funding, LLC, 848 NYS2d 825, 832 [NY Sup Ct Kings Cnty 2007]). Consistent with the policy of liberal discovery in New York, plaintiffs have the burden of establishing that Long, Jacklin and Kleyle "possess[ ] no relevant information" (Minassian v Brenntag N. Am., 2019 NY Misc LEXIS 4018, *11 [Sup Ct NY Cnty 2019]). Here, it is clear that there are compelling reasons to take the deposition testimony of Kleyle, Long and Jacklin.
KPMG has clearly articulated those reasons in their moving brief.
• Kleyle was head of Internal Audit for CNO during the relevant time period, and personally oversaw an audit of Beechwood's compliance with contractual investment guidelines and applicable regulations governing Beechwood's investments. Kleyle thus could testify regarding Beechwood's conduct during the agreements and its compliance with those agreements.
• Long was an independent director on CNO's Board when it allegedly was "fraudulently induced" into approving the Beechwood transaction, and could testify to what the Board knew regarding Beechwood's investment strategy and connections to Platinum. In addition, Long chaired the Board's Investment Committee, and received reports from CNO management on their efforts to monitor Beechwood's compliance with regulations and investment guidelines. Long is an independent witness who could testify to both the decision to enter into the agreements and the operation of the agreements during much of their lives.
• Jacklin was an independent member of CNO's Board when the Beechwood reinsurance agreements were terminated. Jacklin also chaired the Board's Investment Committee when CNO's position on whether Beechwood was in compliance with contractual investment guidelines and applicable regulations appeared to change. If deposed, Jacklin could testify to the operation of the agreements in their later period, which does not overlap with Long, and provide independent testimony about the termination of the agreement.
Because plaintiffs cannot object that the depositions would be irrelevant, they make arguments that KPMG seeks to expand the agreed number of depositions. This is not accurate. These depositions are included within the number (14) agreed by the parties. The witnesses were included in a larger list of potential witnesses that KPMG provided to plaintiffs in August of 2021 (see Affirmation of Lisa C. Wood, Ex 1 [NYSCEF Doc. No. 242]). To the extent that plaintiffs claim that KPMG is demanding the deposition of every potential witness on the list, that does not appear to be well-founded, either.
Nor is it fair to state that KPMG delayed in bringing this issue to the court's attention. [*9]KPMG requested that plaintiffs provide deposition dates for the two board members in early October, 2021, well before any depositions had been taken in this matter (see Wood Reply Aff Ex 2 [Oct. 6, 2021 M. Miller Email to R. Epstein]). When plaintiffs objected on behalf of these witnesses, KPMG advised this court's principal law clerk of the dispute on October 18, 2021, and followed up by email on October 29, 2021 (NYSCEF Doc. No. 251). There has been no delay on KPMG's part with respect to depositions in question.
KPMG's motion to compel deposition testimony of Keith Long, Charles Jacklin, and Thomas Kleyle is therefore granted. The depositions must be completed 90 days from the issuance of this decision.
Motion sequence 015
In motion sequence 015, defendant KPMG moves this court pursuant to 22 NYCRR § 202.21(e) to vacate the note of issue and certificate of readiness filed by plaintiffs on December 14, 2022 (NYSCEF Doc. No. 282) ("note of issue").
A party that "timely moves to vacate a note of issue" pursuant to 22 NYCRR § 202.21(e) "need show only that a 'material fact in the certificate of readiness is incorrect, or that the certificate of readiness fails to comply with the requirements' of section 202.21 in some material respect" (Vargas v. Villa Josefa Realty Corp., 28 AD3d 389, 390 [1st Dep't 2006] [quoting 22 NYCRR § 202.21[e]). When a certification erroneously states that "discovery has been completed," the "note of issue should be vacated" (Ruiz v. Park Gramercy Owners Corp., 182 AD3d 471, 471 [1st Dep't 2020]).
That is the case here and, accordingly, the note of issue must be vacated. KPMG moved to compel plaintiffs to produce materials that, according to KPMG, were material and necessary to its defenses, and those motions were pending before this court at the time of plaintiffs' filing of the note of issue. Plaintiffs nevertheless certified that "[d]iscovery proceedings now known to be necessary [are] completed" and that "[t]here are no outstanding requests for discovery" (Note of issue at 3). Plaintiffs did so even after KPMG allegedly apprised them that such a certification could not be made given the pending motions and offered to move jointly to extend plaintiffs' filing deadline.
While plaintiffs' failure to account for KPMG's outstanding discovery requests alone renders their certification erroneous, plaintiffs' certification also contradicts representations made by plaintiffs themselves to this court on other occasions. For instance, plaintiffs asserted in their motion to compel (motion sequence 007) that the discovery sought there is "material and necessary" to their claims—exactly the opposite position that plaintiffs espoused in the note of issue. Plaintiffs never moved to withdraw their own motion, which they previously described as necessary for the prosecution of their claims. Considering these erroneous statements and the fact that both parties were, at least in part, successful in compelling more discovery, the note of issue is vacated (Ruiz, 182 AD3d at 471).
CONCLUSION
Accordingly, it is hereby
ORDERED that plaintiffs' motion sequence number 007 is granted in part, to the extent that KPMG is directed to produce documents related to communications concerning Culala-Besalo and Watts within 30 days of the issuance of this decision or, alternatively, to produce a [*10]"Jackson Affidavit" to confirm that documents requested have been searched for and are not found; and it is further
ORDERED that defendants' motion sequence 008 is granted in part, to the extent that plaintiffs are directed to produce non-redacted copies of the requested settlements as well as the complaint from the "Willis Re action" within 30 days of the issuance of this decision; and it is further
ORDERED that defendant's motion sequence 013 to compel deposition testimony of Keith Long, Charles Jacklin, and Thomas Kleyle is granted and that the depositions must be completed within 90 days of the issuance of this decision; and it is further
ORDERED that defendant's motion sequence 015 to vacate the note of issue is granted; and therefore it is further
ORDERED that the Clerk is respectfully directed to vacate the note of issue erroneously filed herein.
DATE March 21, 2023
ROBERT R. REED, J.S.C.